# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| INTERNATIONAL LINGUISTICS, INC., ) | |
| ) | |
| Plaintiff. ) | |
| ) | |
| v. ) | Case No. 04-1109-CV-W-GAF |
| ) | |
| LANGUAGE LINK, INC. and ) | |
| NORMAN M. BURKART, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Presently before the Court is a Motion for Summary Judgment filed by the Defendants, Language Link, Inc. ("Language Link") and Norman M. Burkart ("Burkart"). (Doc. #70). The Plaintiff, International Linguistics, Inc. ("Plaintiff"), filed this action seeking compensation for trademark and copyright infringement arising out of the Defendants' use of the trademark, "THE LEARNABLES," and the corresponding foreign language tapes and picture books associated therewith. (Doc. #1). The Defendants assert four theories under which they contend they are entitled to partial summary judgment. (Doc. #70). The Plaintiff opposes this Motion. (Doc. #86). Upon careful consideration of the facts and arguments submitted by the parties, the Court finds that genuine issues of material fact exist which must be resolved by a jury. Accordingly, the Defendants' Motion for Summary Judgment is DENIED.

## DISCUSSION

### I.     Standard

The Defendants filed this Motion for Summary Judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. According to this Rule, summary judgment is appropriate when the "pleadings,

1

depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering this Motion, the Court views all facts in the light most favorable to the Plaintiff and gives the Plaintiff the benefit of all reasonable inferences. *See* Prudential Ins. Co. v. Hinkel, 121 F.3d 364, 366 (8th Cir. 1997). The Court will not weigh the credibility of the evidence, but rather will focus on whether a genuine issue of material fact exists for trial. Roberts v. Browning, 610 F.2d 528, 531 (8th Cir. 1979); United States v. Porter, 581 F.2d 698, 703 (8th Cir. 1978).

An issue of material fact is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). When the evidence supports conflicting conclusions, a *genuine* issue of material fact exists and summary judgment should be denied. Kells v. Sinclair Buick—GMC Truck, Inc., 210 F.3d 827 (8th Cir. 2000) (emphasis added). The "materiality" of a disputed fact is determined by the substantive law governing the claim. Anderson, 477 U.S. at 248. "Disputes over facts that might affect the outcome of the lawsuit according to applicable substantive law are material." Liebe v. Norton, 157 F.3d 574, 578 (8th Cir. 1998) *citing* Anderson, 477 U.S. at 248.

The Defendants bear the burden of proving the absence of disputed material facts. *See* Prudential Ins. Co., 121 F.3d at 366. The burden then shifts to the Plaintiff to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the Plaintiff fails to establish a factual dispute on an essential element of one of its claims, the Court will proceed to determine whether the Defendants are entitled to judgment as a matter of law on that claim. *See* E.E.O.C. v. Woodbridge Corp., 263 F.3d 812, 814 (8th Cir. 2001). To survive summary judgment, the Plaintiff must make a sufficient showing

2

concerning every essential element of its case on which it bears the burden of proof. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 618 (8th Cir. 1988).

**II.    Facts**

Since 1976, the Plaintiff has been engaged in the business of producing materials for foreign language education. The Plaintiff has created THE LEARNABLES language education series which uses books of pictures of common objects, concepts, situations and relationships with corresponding audio recordings in a specific foreign language. (Doc. #1, ¶ 14; Doc. #86, ¶ 6-7). According to the Plaintiff, "the sequence of the pictures and the corresponding words on the tapes are uniquely developed to build upon the early words in a linguistic program to teach language quickly and effectively." (Doc. #86, ¶ 8). The Plaintiff asserts that THE LEARNABLES picture books were created to be used specifically with THE LEARNABLES sound recordings and that the picture books "*cannot* be used without the sound recordings." (Doc. #86, ¶ 9) (emphasis added).

The Plaintiff owns the trademark "THE LEARNABLES," which it registered with the United States Patent and Trademark Office on September 20, 1994 at Registration No. 1854499. (Doc. # 86, ¶ 1). The Plaintiff has attached THE LEARNABLES trademark to the books, audio CD's, audio tapes and book-audio tapes that it has produced to be used in foreign language education. (Doc. #1, ¶ 9). Additionally, the Plaintiff owns the copyrights in and to a large number of original works, including the following books and corresponding sound recordings: THE LEARNABLES Book 1, THE LEARNABLES Book 2, BASIC STRUCTURES Book 1, and BASIC STRUCTURES Book 2. (Doc. #86, ¶¶ 3-4).

Defendant Language Link has provided foreign language interpreting, translating and instruction for more than 16 years. (Doc. #70, ¶ 1). Defendant Norman Burkart ("Burkart") has been the CEO of

Language Link since 1989. (Doc. #70, ¶ 2). For more than fifteen years, Defendant Language Link has purchased THE LEARNABLES foreign language instructional materials from the Plaintiff. (Doc. #70, ¶ 3). Until the filing of this lawsuit in 2004, Defendant Language Link had provided its foreign language students with THE LEARNABLES books in addition to other instructional materials. (Doc. #70, ¶ 6). The students were charged a flat amount for all of their instructional materials. Id. If THE LEARNABLES instructional tapes were available for the languages being taught, the Defendants normally included these with the students' instructional materials at no additional charge. (Doc. #70, ¶ 7).

According to the Plaintiff, the foreign language instructors retained by the Defendants are given a handbook which contains the company's policies, procedures and guidelines. (Doc. #86, ¶ 39). The instructors are required to adhere to the policies and procedures set forth in the handbook. (Doc. #86, ¶ 41). The handbook provides:

> All Language Link Instructors are treated as EMPLOYEES, rather than FREELANCE CONTRACTORS. The reason for this status is primarily the IRS definition of an Employee: one who works under the direction of verbal and written instructions, supervision and methodology; works in a manner consistent with company policies and procedures; works at a time scheduled by the company; works at a location specified by the company. As a prudent and conservative business, Language Link Corporation takes a conservative interpretation to government regulatory guidelines. Some ramifications to instructors of the employee status are that there are income tax payroll deductions. The company also pays additional payroll-related taxes due to the employee status.

(Doc #86, ¶ 41, Pl.'s Ex. 15). The Plaintiff asserts that the Defendants' foreign language instructors appear on the Defendants' payroll and are required to regularly produce progress reports. (Doc. #86, ¶ 43). Furthermore, the Defendants specify the location of the instructors' classes and the instructors are required to submit a written request to change the time or location of their classes. Id.

Defendant Language Link has provided four Korean language instruction courses to a total of five

4

students. (Doc. #70, ¶ 14). Defendant Language Link received aggregate gross revenue in the amount of $2800 for these Korean language instruction courses. (Doc. #70, ¶ 15). In 2002, Jenny Choi ("Choi") contracted with Defendant Language Link to provide Korean language instruction. (Doc. #70, ¶ 17). Pursuant to her contract with Defendant Language Link, Choi recorded Korean instructional tapes for which she was paid on an hourly basis. Id. The Defendants assert that they provided no direction, guidance or control over the material recorded by Choi and neither reproduced nor possessed the tapes Choi had recorded. (Doc. #70, ¶¶ 18-20). Furthermore, the Defendants contend that they did not exercise control over the sound recording materials produced and utilized by Choi. (Doc. #70, ¶ 21). The Plaintiff asserts that the Defendants specifically authorized Choi to record the Korean audio tapes. (Doc. #86, ¶ 45, Pl.'s Ex. 204). The Plaintiff further contends that the Defendants told their instructors how to record "Learnables" audio tapes based on the presence of the "type instructions for taping Learnables" entry on the "To Do" list found on Defendants' computer hard drive. (Doc. #86, ¶ 29).

Kristi Wheeler ("Wheeler") took a Korean language course from Defendant Language Link. (Doc. #86, ¶ 12). Wheeler's instructor was Juyoung Chun ("Chun"). (Doc. #86, ¶ 35). Wheeler received Korean "Learnables" audio tapes, along with a corresponding THE LEARNABLES Book 1 picture book, from Defendant Language Link for purposes of this course. Id. The labels on the Korean audio tapes which Defendant Language Link provided to Wheeler identified the tapes as "Korean Learnables, Lesson ___" and included the Defendant's trade name, Language Link Corporation, with its distinctive logo. (Pl.'s Ex. 12). The labels on these audio tapes match a labels template found on Defendant Language Link's computer hard drive. (Doc. #86, ¶ 13).

Wheeler subsequently sold these tapes to Alex Gardner ("Gardner"). (Doc. #86, ¶ 11). The

Plaintiff became aware of these tapes when Gardner contacted them on May 23, 2004 to inquire about buying additional Korean language instructional materials. (Doc. #70, ¶ 22). On May 27, 2004, Gardner e-mailed an image of one of the Korean tapes to the Plaintiff. Id. The Plaintiff subsequently purchased five of the cassette tapes containing Korean language instruction from Gardner on August 26, 2005. Id. The Plaintiff has never offered Korean audio tapes and has no future plans to offer Korean language instructional materials. (Doc. #70, ¶ 28). Due to the label, Gardner believed that the Plaintiff had produced the Korean "Learnables" tapes until she contacted the Plaintiff. (Doc. #86, ¶ 27).

The parties dispute the content of the tapes. The Defendants contend that when the Plaintiff's Rule 30(b)(6) representatives, Harris and Jennifer Winitz, were deposed on November 8, 2005, the Plaintiff did not have a certified translation of any of the Korean tapes in question. (Doc. #70, ¶ 27). The Defendants argue that a certified translation of the Korean tapes is necessary to prove their content. (Doc. #70). The Plaintiff contends that the content of the Korean "Learnables" tapes, which Wheeler obtained from Defendant Language Link, matches the Plaintiff's copyrighted THE LEARNABLES Book 1 exactly. (Doc. #86, ¶ 14). In support of this contention, the Plaintiff cites the affidavit of Alex Gardner ("Gardner"). Id. Gardener asserts in her affidavit that she "speak[s] and understand[s] Korean language at a functional level," she has "listened to all ten lessons on the [a]udiocassettes several times" and "the content of the [a]udiocassettes matches the pictures in the workbook exactly." (Pl.'s Ex. 208, ¶ 7).

The Plaintiff filed this action upon discovering that the Defendants had produced and marketed Korean language instructional audio tapes which it marked with a counterfeit "Learnables" trademark. (Doc. #1, ¶ 21). The Plaintiff also learned that the Defendants had recorded audio tapes in Portuguese which it sold to students in an International Linguistics binder with a copy of THE LEARNABLES Book

6

1, to which Defendants attached a sticker with their trade name and registered trademark. (Doc. #86, ¶ 16). The Plaintiff asserts that the Defendants produced and sold at least twenty to thirty-six counterfeit "Learnables" tapes. (Doc. #1, ¶ 22). According to the Plaintiff, the Defendants created actual confusion in the marketplace by their use of a counterfeit trademark and false designation of the source of the foreign language materials. (Doc. #1, ¶ 23). The Plaintiff further argues that in addition to infringing on the Plaintiff's trademark, the Defendants' production of the Korean and Portuguese versions of the "Learnables" audio tape constitutes an unauthorized derivative work and infringes on the Plaintiff's copyrighted THE LEARNABLES books and audio tapes. (*See* Doc. #1, ¶ 24).

Accordingly, the Plaintiff filed the present action asserting four claims for relief against the Defendant: (1) Trademark Infringement arising under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); (2) Unfair Competition arising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) Copyright Infringement arising under 17 U.S.C. §§ 501-505; and (4) Common Law Unfair Competition arising under the common law of the State of Missouri. (Doc. #1).

The Defendants assert that they are entitled to partial summary judgment in this case under four theories. (Doc. #70). First, the Defendants argue that they are not vicariously liable for the teaching materials which their foreign language instructors select for their students because the instructors are independent contractors. Id. Second, the Defendants assert that they are entitled to summary judgment on the Plaintiff's trademark infringement and unfair competition claims because the Plaintiff has failed to prove actual damages. Id. Third, the Defendants argue that they are entitled to summary judgment on the Plaintiff's copyright infringement claim because the Plaintiff has failed to present sufficient evidence to support a prima facie claim. Id. Finally, the Defendants contend that their use of the Plaintiff's copyrighted

7

material constitutes "fair use." Id.

The Plaintiff opposes the Defendants' Motion for Summary Judgment. (Doc. # 86). The Plaintiff argues that the foreign language instructors were not independent contractors because the Defendants had the right and ability to supervise the infringing activity and the Defendants had a financial interest in the Korean "Learnables" tapes. Id. The Plaintiff asserts that it does not have to prove actual damages in a trademark infringement case arising under 15 U.S.C. § 1114, but rather, pursuant to 15 U.S.C. § 1117(a), is allowed "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the cost of the action." Id. Finally, the Plaintiff asserts that the Defendants failed to properly plead their fair use defense, and even if this defense was properly pled, it does not form the basis for summary judgment as it requires a fact intensive inquiry. Id.

**III. Analysis**

### A.    *Independent Contractor*

The Defendants argue that they cannot be held liable for copyright infringement under a theory of vicarious liability because the foreign language instructors, who record the audio tapes, are independent contractors. According to the Defendants, vicarious liability for copyright infringement requires the Plaintiff to prove that the Defendants: (1) had the right and ability to supervise the infringing activity; and (2) had an obvious and direct financial interest in the exploitation of the copyrighted materials. RCA/Ariola Int'l v. Thomas & Grayston Co., 845 F.2d 773, 781 (8th Cir. 1988).

With respect to the first element, the Defendants assert that they did not have the right nor the ability to supervise the Korean and Portuguese language recordings. The Defendants contend that the use of audio recordings was solely at the discretion of the instructor. Furthermore, the Defendants claim that they

8

did not review or approve the tapes. In response, the Plaintiff contends that the Defendants' instructor handbook specifically states that instructors are considered employees, not "freelance contractors." Furthermore, the Plaintiffs assert that the instructors who recorded the tapes are not independent contractors because they are on the Defendants' payroll, they are required to regularly produce progress reports, the Defendants specified where their classes would take place and the Defendants required them to submit a written request to change the time or location of their classes. Additionally, the Plaintiff contends that the Defendants specifically authorized Choi to record the Korean language audio tapes and told their instructors how to record "Learnables" audio tapes. The record before the Court reveals a genuine issue of material fact exists regarding whether the Defendants had the right and ability to supervise the instructors and their production of the audio tapes.

With respect to the second element, the Defendants allege that they had no financial interest in the tapes because the tapes were simply offered as supplementary instructional materials at no charge to the students. The Plaintiff doubts that Defendant Language Link, a for-profit corporation, and its CEO were giving away audio tapes which they paid their instructors to produce. The Plaintiff asserts that compensation for the tapes was included in the lump sum amount that the Defendants charged their students for supplementary materials, even though payment for the audio tapes was not specifically identified. The record before the Court reveals that a genuine issue of material fact also exists regarding the Defendants' financial interest in the tapes.

The Defendants further argue that the Plaintiff has failed to provide the requisite "chain-of-custody" evidence linking the Korean tapes recorded by Choi to the Defendants. (Doc. #70). The Plaintiff contends that, in addition to specifically authorizing Choi to record the tapes and instructing her on how the tapes

9

should be recorded, it has linked the unauthorized use of it's the LEARNABLES trademark to the Defendants because the labels affixed to the Korean audio tapes match a template found on the Defendants' computer hard drive. Again, the Court finds that a genuine issue of material fact exists regarding whether the Plaintiff has established the Defendants' knowledge of and involvement in the allegedly infringing activity.

The Plaintiff has submitted sufficient evidence to create a genuine issue of material fact regarding whether the Defendants are vicariously liable for the production of the Korean and Portuguese audio tapes. Accordingly, the Defendant's Motion for Summary Judgment is DENIED.

### B. Proof of Actual Damages

The Defendants contend that they are entitled to summary judgment on the Plaintiff's trademark infringement and unfair competition claims because the Plaintiff cannot prove actual damages. According to the Defendants, "to recover money damages under the Lanham Trade-Mark Act (15 U.S.C. § 1051 et seq.), a plaintiff 'must prove actual damages and a causal link between defendant's violation and those damages." (Doc. #70 *quoting* Blue Dane Simmental Corp v. American Simmental Ass'n., 178 F.3d 1035, 1042 (8th Cir. 1999)). The Defendants proceed to cite Rhone-Poulenc Rorer Pharms. v. Marion Merrell Dow, Inc., 93 F.3d 511, 515 (8th Cir. 1996) for the proposition that "recovery is prohibited if a plaintiff fails to prove that the defendants' actions caused the harm claimed." The Plaintiff asserts that the Defendants' reliance upon Blue Dane and Rhone-Poulenc Rorer is misguided as these cases involved false and misleading advertising claims arising under 15 U.S.C. § 1125, rather than trademark infringement claims arising under 15 U.S.C. § 1114. In its Reply, the Defendants do not respond to this argument.

The Court finds that damages for claims of trademark infringement and unfair competition are

10

governed by 15 U.S.C. § 1117. Section (a) of this statute provides:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under Section 1125(a) or (d) of this title, or a willful violation under Section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of Sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a). According to this section, a plaintiff is entitled to a monetary recovery if the plaintiff has established a prima facie case of trademark infringement and/or unfair competition. One leading treatise has observed that a plaintiff's monetary recovery on a trademark infringement and/or unfair competition claim may take at least five different forms:

  (1)  An award to plaintiff measured by defendant's profits, either as a way of measuring plaintiff's loss or under an unjust enrichment theory;
  (2)  An award to plaintiff measured by its actual business damages and losses caused by the wrong;
  (3)  An award to the plaintiff measured by its own loss of profits caused by the wrong;
  (4)  An award to plaintiff of punitive damages in addition to actual damages, for the purpose of punishing defendant; and
  (5)  An award to plaintiff of reasonable attorney's fees incurred in prosecution.

5 McCarthy on Trademarks and Unfair Competition § 30.57 (4th Ed.).

The Defendants' contention that the Plaintiff must prove "actual damages," i.e. "damages sustained by the plaintiff" in the parlance of 15 U.S.C. § 1117(a), to recover monetary damages on its trademark

11

infringement and unfair competition claim is flawed because it ignores the fact that damages may also be based on the Defendants' profits. The Defendants may argue at trial that they did not have any profits because they did not sell the Korean or the Portuguese tapes to their students. In response, the Plaintiff may argue that the Defendants were paid for the tapes when the students paid the Defendants a lump sum for the cost of instructional materials. Accordingly, there is a genuine issue of material fact regarding whether the Defendants' profited from the Korean and Portuguese tapes. Therefore, the Defendant's Motion for Summary Judgment is DENIED because a genuine issue of material fact exists for trial regarding the nature and extent of the Plaintiff's monetary damages.

### C. *Copyright Infringement*

The Defendants allege that they are entitled to summary judgment on the Plaintiff's copyright infringement claim. The Plaintiff alleges that the Defendants violated its copyright when they produced Korean and Portuguese language audio tapes to be used in connection with THE LEARNABLES workbook. The Plaintiffs contend that the Korean and Portuguese language audio tapes constitute an unauthorized derivative work. The Defendants argue that the Plaintiff has failed to establish a claim of copyright infringement because it has failed to prove that the Defendants copied original elements of the Plaintiff's copyrighted work. To establish a prima facie claim of copyright infringement, the Plaintiff must prove ownership of a valid copyright and the copying of original elements of the work. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).

The Defendants allege that the Plaintiff has failed to prove that they copied original elements of the Plaintiff's copyrighted work because the Plaintiff has failed to produce a certified translation of the Korean and Portuguese tapes. Id. The Plaintiff offers a simple response to this argument: "[P]laintiff has produced

12

evidence in the form of the Garnder and Cambar affidavits that the content of the audiocassette tapes they acquired exactly matches the content of [P]laintiff's copyrighted [THE] LEARNABLES Book 1." (Doc. #86). Gardner contends that she "speak[s] and understand[s] Korean language at a functional level" and has "listened to all ten lessons on the [a]udiocassettes several times" and "the content of the [a]udiocassettes matches the pictures in the workbook exactly." (Pl.'s Ex. 208, ¶ 7). Cambar asserts that she "speak[s] functional to proficient Portuguese" and "the words spoken on the audiocassettes correspond to the pictures in the 'LEARNABLES' workbook." (Pl.'s Ex. 207, ¶¶ 8-9).

The question here is whether the Korean and Portuguese tapes infringe on the copyright of the Plaintiff's THE LEARNABLES workbook. To determine whether or not the Korean and Portuguese tapes are an "unauthorized derivative work," the Plaintiff must establish the contents of the tapes. As the jurors are not likely to have specific knowledge of the Korean and Portuguese languages, it will be necessary for the Plaintiff to produce an expert witness to translate the contents of the Korean and Portuguese tapes. It is not clear from the record whether or not Gardner and Cambar have the requisite command of the Korean and Portuguese languages to offer their opinion on the contents of the tapes. At trial, the Court will consider whether these witnesses have the requisite qualifications to testify as experts pursuant to Fed. R. Evid. 702. Accordingly, the Defendant's Motion for Summary Judgment on the Plaintiff's copyright infringement claim is DENIED as the Plaintiff has set forth sufficient facts to create a genuine issue of material fact for trial.

### D.     Fair Use Doctrine

The Defendants further move for summary judgment on the Plaintiff's copyright infringement claim on the grounds that the Defendants' actions constitute "non-infringing fair use." The Plaintiff contends that

13

summary judgment on this ground is inappropriate because fair use is an affirmative defense which the Defendants failed to properly plead in their Answer.  In their Reply, the Defendants moved to amend their Answer to assert the affirmative defense of "fair use."  The Court finds that the Plaintiff will not be prejudiced by this amendment and accordingly, the Defendants are GRANTED leave to amend their Answer within three (3) days of the date of this Order solely for the purpose of asserting the affirmative defense of "fair use."

The Plaintiff further argues that the Defendants are not entitled to summary judgment on their fair use defense because the record reveals that the content of the Korean and Portuguese audiotapes correspond directly and entirely with the pictures depicted in THE LEARNABLES books.  Id.  The fair use doctrine is codified in the Copyright Act of 1976, 17 U.S.C. § 107, which provides in relevant part:

> . . . [T]he fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research is not an infringement of copyright.  In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include –
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.
> The fact that a work is unpublished shall not itself bar a finding of fair use is such finding is made upon consideration of all the above factors.

The fair use defense presents a mixed question of law and fact, Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539 (1985), and "requires a fact-intensive inquiry which is ill-suited for summary judgment."  Coleman v. ESPN, Inc., 764 F.Supp. 290, 294-95 (S.D. N.Y. 1991) *citing* Maxtone-

14

Graham v. Burtchaell, 803 F.2d 1253, 1255 (2nd Cir. 1986), *cert. denied*, 481 U.S. 1059 (1987) ("Summary judgement on the question of fair use has been the exception rather than the rule.").

In the present case, genuine issues of material fact exist which preclude summary judgment on the Defendants' fair use defense. There is a question as to whether the tapes were being used for a commercial purpose. The Defendants assert that their students did not pay for the tapes and they were provided free of charge. The Plaintiff asserts that the Defendants received payment for the tapes when the students paid a lump sum for instructional materials. Accordingly, there is a factual question regarding whether the Defendants accepted monetary compensation in exchange for the tapes. Furthermore, the content of the tapes is disputed. It is impossible for this Court to determine "the amount and substantiality of the portion used" by the Defendants in relation to the Plaintiff's copyrighted work as a whole without knowing the content of the audiotapes. Because the commercial use and content of the tapes are disputed, the Court finds that summary judgment cannot be granted on the Defendants' fair use defense. Therefore, the Defendants' Motion for Summary Judgment is DENIED.

## CONCLUSION

The Plaintiff has satisfied its burden of setting forth specific facts demonstrating that there is a genuine issue for trial. The parties dispute whether the Defendants had the right and ability to control the production of the Korean and Portuguese tapes. The parties dispute whether the Defendants received monetary compensation in exchange for the tapes. Finally, the parties dispute the contents of the Korean and Portuguese tapes. These factual questions must be resolved by a jury. Accordingly, the Defendants' Motion for Summary Judgment is DENIED in its entirety. Consistent with the foregoing analysis, the Defendants are HEREBY ORDERED to file an amended Answer asserting their "fair use" defense within

15

three (3) days of the date of this Order.

    **IT IS SO ORDERED.**

                                                /s/ Gary A. Fenner
                                                GARY A. FENNER, JUDGE
                                                 United States District Court

DATED:    March 28, 2006